UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY PYLE; KENNETH LUCE;<br>and JAMES ROBINSON,<br><br>Defendants. | Case No. 4:24-cr-00267-DCN<br><br>**MEMORANDUM DECISION AND<br>ORDER** |

## I. INTRODUCTION

Before the Court is Defendant James Robinson's Motion to Suppress (Dkt. 71), Defendant Jeffrey Pyle's Joinder (Dkt. 72), and Defendant Kenneth Luce's Joinder (Dkt. 82). The Government filed their Response in opposition (Dkt. 89), and all three Defendants replied (Dkts. 94, 95, 96 and 97). The Court held an evidentiary hearing on August 27, 2025, and took the matter under advisement. Dkt. 40. Upon review, and for the reasons outlined below, the Court DENIES the Motion to Suppress.

## II. BACKGROUND

In July 2020, Idaho State Police Detective Joshua Tuttle began investigating Tyler Horkley for suspected methamphetamine trafficking. During the investigation, law enforcement conducted multiple controlled purchases of methamphetamine from Horkley

MEMORANDUM DECISION AND ORDER - 1

using confidential informants.

On August 29, 2024, investigators stopped a confidential source ("CS") after the CS left Horkley's residence. The CS reported receiving methamphetamine from Horkley and identified Kenneth Luce as a regular supplier. The CS further relayed that Horkley owed Luce money and overheard a related conversation. Law enforcement subsequently observed Horkley and Luce meet briefly. Text messages between the CS and Horkley suggested that Horkley and Luce had different sources of supply.

On September 9, 2024, at law enforcement's direction, the CS recorded a telephone call with Luce. During the call, the CS asked whether Luce had "anything good," which the CS identified as coded language for narcotics. Luce responded affirmatively.

On September 26, 2024, investigators intercepted communications between Luce and Jeffrey Pyle, whom they identified as Luce's source of supply and a resident of Southern California. That same day, law enforcement arranged a controlled purchase with Daren Peterson using a separate CS. Intercepted communications showed Peterson and Luce communicating and meeting prior to the transaction. Peterson ultimately provided less methamphetamine than agreed, stating his source had "shorted" him. Investigators believed Luce had been unable to provide Peterson with a full supply.

On September 27, 2024, intercepted communications showed Pyle traveling from Utah and arranging to meet Luce. Pyle asked Luce, "what do you got together?" Luce responded, "Fifteen." Investigators believed this referred to money. Agents observed Luce and Pyle meet briefly in Malad, Idaho. Afterward, Pyle returned south, and Luce drove north. Based on the communications, timing of travel, and surrounding circumstances,

MEMORANDUM DECISION AND ORDER - 2

investigators suspected Pyle was transporting narcotics to Luce.

On October 8–9, 2024, intercepted communications reflected coordination between Luce, Pyle, and James Robinson. Robinson requested money from Luce while "scrambling" for funds and indicated he was preparing to travel. Law enforcement believed Robinson was traveling to Idaho in furtherance of the suspected drug activity.

At approximately 3:43 p.m. on October 9, 2024, officers observed Robinson at Luce's residence. Robinson placed an item in his vehicle and departed. Law enforcement maintained surveillance as Robinson traveled south toward Twin Falls.

At approximately 7:21 p.m., Idaho State Police Corporal Mitchell Howard observed a white 2016 Hyundai Sonata with California plates traveling 80 miles per hour in a 60-mile-per-hour zone on U.S. Highway 93 in Twin Falls County. The vehicle also failed to signal a lane change. Both are violations of Idaho law. Corporal Howard initiated a traffic stop on the Hyundai Sonata.

Robinson was the sole occupant and identified himself with a California driver's license. He stated he was visiting his daughter in Idaho Falls and denied possessing contraband. While routine license and warrant checks were conducted, Corporal Howard deployed a trained drug-detection canine. Robinson consented to the canine sniff and rolled his windows down when asked.

The canine alerted to the odor of narcotics near the vehicle. A subsequent search revealed approximately $12,000 in cash inside a duffle bag located in the trunk. Robinson stated he intended to use the money to purchase a vehicle but was unable to produce any confirming communications.

MEMORANDUM DECISION AND ORDER - 3

Later that evening, Luce and Pyle exchanged communications referencing "Twin Falls PD," which investigators believed related to the traffic stop.

Following the October stop, intercepted communications reflected continued coordination among Pyle, Luce, and Robinson. Investigators observed coded references to money, narcotics, secondary phones, and travel plans. Geolocation data showed Pyle traveling from Yucca Valley, California, toward Idaho on multiple occasions.

On one such trip, Pyle traveled to Idaho Falls, met with Luce, and departed after approximately 38 minutes, later checking into a hotel in Fort Hall, Idaho. Luce was later observed entering the same hotel room.

Throughout November 2024, intercepted calls reflected discussions about drivers, "jumpers" (a term commonly used for individuals who transport contraband across the border), and returning with money. Pyle discussed avoiding certain locations known for narcotics activity and coordinating exchanges through Robinson. Communications included references to "inventory," "tickets," "parts," "carburetors," and counting money, which investigators interpreted as coded drug-trafficking language.

On November 17–20, 2024, Pyle and Luce discussed a Harley-Davidson motorcycle. Pyle stated he would transport the motorcycle in an enclosed trailer during his next trip to Idaho. On November 20, geolocation data showed Pyle leaving California. Robinson traveled separately in a white rental truck pulling an enclosed trailer containing the motorcycle.

On November 21, 2024, Pyle and Luce communicated regarding money. Luce contacted several individuals who, based on prior communications, owed him money.

MEMORANDUM DECISION AND ORDER - 4

Surveillance confirmed Luce met with several of those individuals that afternoon.

At approximately 2:18 p.m., law enforcement observed Pyle's Ford truck traveling north on Interstate 15. A white Dodge Ram rental truck, driven by Robinson, traveled ahead of Pyle and pulled a white enclosed trailer registered to a California individual. Pyle was identified as a passenger in the Ford truck.

At approximately 4:09 p.m. on November 21, 2024, Idaho State Police Corporal Joshua Ingersoll stopped the Dodge Ram pickup on northbound Interstate 15 in Bannock County. Robinson was identified as the driver and placed in handcuffs. The truck and trailer were transported to the Idaho State Police District 5 Office in Pocatello.

Detective Tuttle prepared a search warrant with assistance from Detective Taylor Wade and submitted it to Bannock County Magistrate Judge Aaron Thompson. Although the warrant was not time-stamped, Detective Wade emailed Detective Tuttle at 4:39 p.m. confirming that it had been signed. The search began at approximately 5:00 p.m.

During the search of the enclosed trailer, DEA Special Agent Daniel Riley located 19 one-pound bundles of methamphetamine concealed inside a box of kitty litter positioned next to the motorcycle.

On November 26, 2024, a federal grand jury returned an indictment charging Robinson, Pyle, and Luce with Conspiracy to Distribute and Possess with Intent to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846.

On March 24, 2025, Robinson filed a Motion to Suppress seeking to exclude evidence obtained during the October 9, 2024, and November 21, 2024, traffic stops. Dkt. 71. Pyle and Luce subsequently joined in the motion. Dkts. 72, 82. Defendants argue the

MEMORANDUM DECISION AND ORDER - 5

evidence seized during both stops, as well as any derivative evidence, constitutes fruit of the poisonous tree and must be suppressed under the Fourth Amendment.

### III. LEGAL STANDARD

The Fourth Amendment guarantees the right of individuals "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Mapp v. Ohio*, 367 U.S. 643 (1961). Generally, searches and seizures conducted without a warrant are "*per se* unreasonable under the Fourth Amendment" subject to "a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (citation modified).

An exception to the warrant requirement that is pertinent to this case is a seizure for a traffic violation. *Rodriquez v. United States,* 575 U.S. 348, 354 (2015). Such a seizure is only justified if the officer diligently pursues the purpose of the stop; any deviations or delays for unrelated investigations violate the driver's Fourth Amendment right, unless supported by independent reasonable suspicion. *Id*. at 354–55.

Additionally, the automobile exception to the warrant requirement permits police to search a vehicle when the car is "readily mobile" and "probable cause exists to believe it contains contraband." *United States v. Davis*, 530 F.3d 1069, 1084 (9th Cir. 2008) (citation modified). The police may search both an automobile and the containers within it "where they have probable cause to believe contraband or evidence is contained." *California v. Acevedo*, 500 U.S. 565, 580 (1991).

If no warrantless search exceptions apply, evidence must be suppressed because evidence that the government obtains in violation of the Fourth Amendment is generally

MEMORANDUM DECISION AND ORDER - 6

excluded from the prosecution of the alleged violator. *Wong Sun v. United States,* 371 U.S. 471, 484–85 (1963). Further, evidence discovered through "exploitation of" an illegal search or seizure, must also be suppressed as "fruit of the poisonous tree." *Id*. at 488.

## IV. DISCUSSION

Several issues were raised in the parties' briefing and during the evidentiary hearing. The Court will address each in turn.

### A. Standing

The United States contends Defendants Pyle and Luce lack standing to assert a Fourth Amendment challenge to the searches and seizures at issue because Robinson was the driver of the vehicle on October 9, 2024, and also the rented truck on October 21, 2024. The Government further contend Robinson cannot even justify his own standing as to the first stop because his wife actually rented the car, not him.

It is well established that a defendant may seek suppression of evidence on Fourth Amendment grounds only if he demonstrates that his own Fourth Amendment rights were violated by the challenged search or seizure. *Alderman v. United States*, 394 U.S. 165, 171–72 (1969); *Rakas v. Illinois*, 439 U.S. 128, 131 n.1, 133–34 (1978); *Rawlings v. Kentucky*, 448 U.S. 98, 106, (1980). A defendant must, therefore, establish a legitimate expectation of privacy in the place searched or the property seized to satisfy standing.

### 1. *October 9, 2024, Stop*

Defendants Pyle and Luce did not address standing in their briefing or during the evidentiary hearing as to the October 9, 2024, stop. Defendant Robinson, however, affirmatively asserts standing on the basis that he obtained the rental vehicle and was an

MEMORANDUM DECISION AND ORDER - 7

authorized driver.

The Government argues Robinson lacks standing because the vehicle was rented by Dalene Robinson, James's wife, and the rental agreement did not list James as an authorized driver. At the evidentiary hearing, however, Robinson's counsel directed the Court to Exhibit A attached to Robinson's Reply in Support of Motion to Suppress (Dkt. 97-13), which identifies Robinson as an additional authorized driver on the rental agreement.

To establish standing, Robinson must demonstrate a subjective expectation of privacy in the vehicle that society recognizes as objectively reasonable. *See Minnesota v. Olson*, 495 U.S. 91, 95–96 (1990); *California v. Greenwood*, 486 U.S. 35, 39 (1988); *United States v. Henderson*, 241 F.3d 638, 646–47 (9th Cir. 2000), as amended (Mar. 5, 2001).

The evidence establishes that Robinson was an authorized driver under the rental agreement and was the sole occupant of the vehicle at the time of the stop. Under these circumstances, he possessed a legitimate expectation of privacy in the rental vehicle. Accordingly, Robinson has standing to challenge the October 9, 2024, stop.

In contrast, neither Pyle nor Luce have demonstrated any possessory or privacy interest in the rental vehicle. They have not shown that they were authorized drivers, occupants, or otherwise had lawful control over the vehicle at the time of the stop. Because they have failed to establish a legitimate expectation of privacy in the vehicle, Pyle and Luce lack standing to challenge the October 9, 2024, stop.

MEMORANDUM DECISION AND ORDER - 8

2. *November 21, 2024, Stop*

a. <u>Pyle</u>

Pyle asserts he had a legitimate expectation of privacy in the contents of the trailer stopped on November 21, 2024, because he personally loaded and secured his property— a motorcycle—into the trailer and he and Robinson were engaged in a joint venture. *See* Dkt. 72-4.

The Ninth Circuit has recognized that a "formalized arrangement among defendants indicating joint control and supervision of the place is sufficient to support a legitimate expectation of privacy." *United States v. Johns*, 851 F.2d 1131, 1136 (9th Cir. 1988) (citing *United States v. Broadhurst*, 805 F.2d 849, 851–52 (9th Cir. 1986)).

The Government counters Pyle lacks standing because he did not own either the motorcycle or the trailer and was merely having Robinson transport the motorcycle for sale on his behalf. The Government further contends that one relinquishes an expectation of privacy when property is entrusted to a third party.

To contest the legality of a search or seizure, a defendant must establish a "legitimate expectation of privacy" in the place searched or the property seized. *United States v. Padilla*, 508 U.S. 77, 80 (1993) (citation modified).

Although Pyle may not have held formal title to the motorcycle or trailer, the evidence demonstrates that he personally loaded and secured the motorcycle and maintained a possessory interest in it during transport. His active control over the property and participation in a coordinated transport arrangement with Robinson reflect more than a passive or attenuated connection. Under these circumstances, the Court finds Pyle has

MEMORANDUM DECISION AND ORDER - 9

established a sufficient possessory and privacy interest in the contents of the trailer to confer standing to challenge the November 21, 2024, stop.

> b. Luce

Luce advances three arguments to support standing: (1) that his alleged participation in the charged conspiracy confers standing; (2) that he had a legitimate interest in the Harley-Davidson motorcycle because he intended to purchase it; and (3) that the Government waived any standing challenge by failing to file a separate written motion.

To begin, the Court rejects Luce's waiver argument. The Government repeatedly raised the issue of standing in its written response to the motions to suppress, and standing was the first issue addressed at the evidentiary hearing. The Court permitted full participation by all counsel. The Government consistently and expressly opposed standing. Accordingly, the Court finds no waiver.

Luce's first argument—that his status as an alleged coconspirator confers standing—is foreclosed by Supreme Court precedent. Although the Ninth Circuit previously recognized a "coconspirator exception," the Supreme Court resolved that conflict in *Padilla*, 508 U.S. at 81–82. The Court reiterated that suppression may be urged only by those who's own Fourth Amendment rights were violated. *Id*. at 81 (citing *Alderman*, 394 U.S. at 171–72). As the Supreme Court explained in *Alderman*:

> The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Co-conspirators and codefendants have been accorded no special standing.

394 U.S. at 171–72.

MEMORANDUM DECISION AND ORDER - 10

The Supreme Court emphasized that expectations of privacy and property interests govern Fourth Amendment analysis, and participation in a conspiracy "neither adds to nor detracts from them." *Padilla*, 508 U.S. at 81–82.

Luce has not demonstrated that he owned, possessed, or exercised control over the trailer or motorcycle at the time of the stop. His stated intent to purchase the motorcycle[1] in the future does not establish a present, legitimate expectation of privacy in the property searched. Nor does his alleged participation in a conspiracy confer standing.

Accordingly, the Court finds that Luce has failed to establish a legitimate expectation of privacy in the trailer or its contents and, therefore, lacks standing to challenge the November 21, 2024, stop.

Having resolved standing, the Court turns next to the merits of the Defendants' arguments.

### B. October 9, 2024, Traffic Stop

Robinson argues the October 9, 2024, traffic stop near Twin Falls, Idaho was unconstitutional because no actual drugs or drug-related activity were observed when Robinson visited Luce's resident. Thus, there was no probable cause or legal basis for the traffic stop because the stop was conducted at the behest of another officer who observed

---

[1] Luce submitted a copy of a credit application from Eaglemark Savings Bank in support of his standing argument. The application reflects only that Luce sought financing to purchase a Harley-Davidson motorcycle from a dealership. It does not establish that he intended to purchase the specific motorcycle located inside the trailer at issue in this case, nor does it demonstrate any present possessory or privacy interest in that motorcycle. The Court, therefore, assigns the document only the limited weight to which it is entitled.

MEMORANDUM DECISION AND ORDER - 11

the meeting and the dash camera does not conclusively show a traffic violation.

Robinson further argues that, once the traffic stop was initiated, the K-9 search was unlawful because the dog entered the vehicle's interior through the driver's window before alerting and doing so constitutes a warrantless intrusion. What's more, no drugs or paraphernalia were found during the search. Only $12,000 cash was located, but not near drugs or drug paraphernalia. Robinson also contends the cash was seized in violation of Idaho Code § 37-2744(a)(6).

The Government postures there was reasonable suspicion to stop the vehicle based on observed traffic violations—Robinson driving 80 miles her hour in a 60 mile per hour zone and failure to signal a lane change, both of which are violations of Idaho Code. For a stop to be reasonable, law enforcement must have a suspicion that a motorist has violated the law. *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). Here, Corporal Howard had reasonable suspicion that Robinson had violated Idaho Code by failing to signal a lane change and by driving 20 miles per hour over the posted speed limit. While the Defendant argues Corporal Howard had a limited view and could not observe any traffic violations, the dashcam footage and Howard's testimony at the evidentiary hearing illustrates he had sufficient ability to observe Robinson's driving and could credibly determine a traffic violation had been committed.

Next, Robinson argues the K-9 search was unlawful because the dog entered the vehicle's interior through the driver's window before alerting. The Government claims that before the K-9 ever crossed the curtilage of the vehicle, she alerted to the presence of drugs.

MEMORANDUM DECISION AND ORDER - 12

After that, Robinson gave permission for the dog to break the curtilage and touch the vehicle.

A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Illinois v. Caballes,* 543 U.S. 405, 410 (2005). And when a canine sniff indicates a vehicle contains narcotics, then probable cause is established to search the vehicle. *See United States v. Lingenfelter,* 997 F.2d 632, 639 (9th Cir. 1993); *United States v. Aguirre,* 2013 WL 4039791, at *3 (D. Idaho Aug. 7, 2013).

Assume arguendo that the K-9 alerted after the dog's paws rested on the windowsill of Robinson's vehicle. Under those circumstances, such would likely be a constitutional violation. However, as evidenced in both the dash cam video, and as explained at the evidentiary hearing, the K-9 alerted to the presence of drugs *prior* to putting her paws on Robinson's car. Thus, there was no impermissible entry or constitutional violation.

Moreover, under the totality of the circumstances, Howard already had probable cause to believe that Robinson was engaged in drug trafficking. Detective Tuttle was in the midst of a six-week-long investigation into Luce. He had observed text messages, phone calls, and physical meetings that dealt with narcotics. He knew Robinson was involved. Probable cause may be based on the collective knowledge of law enforcement officers. *See United States v. Ramirez*, 473 F.3d 1026, 1033 (9th Cir. 2007) (explaining that "where an officer (or team of officers), with direct personal knowledge of all the facts necessary to give rise to reasonable suspicion or probable cause, directs, or requests that any other officer, not previously involved in the investigation, conduct a traffic stop, search or arrest"

MEMORANDUM DECISION AND ORDER - 13

such will satisfy probable cause).

Furthermore, once probable cause existed to search the vehicle, officers were permitted to search containers within the vehicle and seize evidence of criminal activity.

In *United States v. U.S. Currency, $83,310.78,* 851 F.2d 1231 (9th Cir.1988), evidence apart from the discovery of drugs or paraphernalia may establish the requisite probable cause. The Court held that finding drugs at the location is not required to establish probable cause to forfeit money; instead, courts must evaluate the totality of the circumstances, rather than relying on any single factor. *Id.* at 1236 (citing *$5,644,540.00,* 799 F.2d at 1363). Again, Howard had been made aware of the ongoing investigation from Detective Tuttle, his K-9 alerted on Robinson's car, and the money was packaged in such a way that it was reasonable for him to assume the money was associated with illegal activity and seize the same.

In short, Howard had probable cause to stop the vehicle (two traffic violations); probable cause to deploy his K-9 (collective knowledge and Robinson's consent); probable cause to search the vehicle (K-9 alert); and probable cause to seize the $12,000 found therein (collective knowledge and K-9 alert). There was no constitutional violation here and the October 9, 2024, stop will not be suppressed.

## C. November 21, 2024, Stop

Defendant Robinson raises several challenges to the validity and execution of the November 21, 2024, search warrant. First, Robinson contends the warrant lacked sufficient particularity because it did not clearly authorize a search of the enclosed trailer. Relatedly, Robinson argues the officers conducting the stop had not reviewed the warrant and were,

therefore, unaware of any limitations on the places authorized to be searched. Robinson further asserts the warrant was not supported by probable cause and was instead based, at least in part, on information obtained during the allegedly unlawful October 9, 2024, traffic stop. In addition, Robinson suggests the warrant may not have been signed prior to the initiation of the traffic stop. Finally, Robinson argues that law enforcement failed to comply with Idaho Criminal Rule 41 because he was not presented with a copy of the warrant and was not provided a receipt for the property seized.

The Government postures the November 21, 2024, stop and subsequent search were supported by probable cause developed during a lengthy investigation involving surveillance, intercepted communications, and coordination among law enforcement officers. According to the Government, the search warrant was validly obtained and validly executed. The Government further argues that, even if the warrant contained technical deficiencies, suppression would not be warranted because the officers acted in objectively reasonable reliance on the warrant.

Upon review, the Court finds Robinson (and Pyle) have not met their burden and the warrant, search, and seizure were constitutional.

To begin, the totality of the circumstances demonstrates that law enforcement had probable cause to believe the vehicle and trailer contained contraband at the time of the stop. The investigation preceding the stop provided a substantial basis to support that conclusion, independent of any single factor or isolated event surrounding the stop itself.

"Probable cause exists if there is a fair probability that contraband or evidence of a crime will be found in a particular place under the totality of the circumstances." *United*

MEMORANDUM DECISION AND ORDER - 15

*States v. Faagai*, 869 F.3d 1145, 1150 (9th Cir. 2017) (citation modified). *See also United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) ("[w]hether there is a fair probability depends upon the totality of the circumstances, including reasonable inferences, and is a commonsense, practical question. Neither certainty nor a preponderance of the evidence is required.")(citation modified); *United States v. Crozier*, 777 F.2d 1376, 1380 (9th Cir. 1985) (allowing for a "common-sense and realistic" assessment of the relevant facts and circumstances). Ultimately, the existence of probable cause is determined by "looking to the collective knowledge of all the officers involved in the criminal investigation," not only the information available to the person who actually took the challenged action. *Ramirez*, 473 F.3d at 1032 ( (citation modified). *United States v. Chan*, 2023 WL 1069702, at *9 (D. Haw. Jan. 27, 2023). As already noted, there was sufficient information—including intercepted communications and surveillance—providing ample probable cause that Robinson, Pyle, Luce (and others) were engaging in illicit drug activities. Probable cause was present and dooms Defendants' Motion.

Next, to the extent Robinson challenges the warrant's particularity or timing, those arguments do not alter the Court's analysis. Even assuming arguendo that the warrant contained deficiencies, the search was justified under the automobile exception, which permits the warrantless search of vehicles and containers therein when probable cause exists. "The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." *Acevedo*, 500 U.S. at 580 (1991) (citation modified). Having already determined there was probable cause to stop the vehicle, the Court finds this argument unavailing. And the fact that it took time to obtain a

MEMORANDUM DECISION AND ORDER - 16

warrant exemplifies the necessity of the automobile exception.

Finally, even if the Court found the search warrant lacked probable cause—which it does not—or had concerns about the timing of the warrant—which it does not—the Court also finds the good-faith exception applies.

In *United States v. Leon*, the Supreme Court set out an exception to the exclusionary rule for a search conducted in good faith reliance upon an objectively reasonable search warrant. 468 U.S. 897 (1984). The Government bears the burden of proving that officers relied on the search warrant "in an objectively reasonable manner." *United States v. Crews*, 502 F.3d 1130, 1136 (9th Cir. 2007) (citing *United States v. Clark*, 31 F.3d 831, 835 (9th Cir. 1994)); *see also United States v. Huggins*, 299 F.3d 1039, 1047 (9th Cir. 2002). The exclusionary rule does not require suppression where officers act in objectively reasonable reliance on a warrant issued by a neutral magistrate. *Leon*, 468 U.S. at 917. The relevant inquiry is whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization. The Supreme Court has observed that, "sending state and federal courts on an expedition into the minds of police officers would produce a grave and fruitless misallocation of judicial resources." *U.S. v. Laughton*, 409 F.3d 744, 750 (2005). Therefore, the test is not what the executing officer did believe or even could have believed, but rather whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate judge's authorization. *Id*.

Here, there is no evidence that any of the officers acted in bad faith or that reliance on the warrant was objectively unreasonable. To the contrary, the record reflects officers had probable cause to initiate the traffic stop and, further, that officers sought and obtained

MEMORANDUM DECISION AND ORDER - 17

judicial authorization to search the vehicle and trailer as soon as reasonably possible and then executed the search consistent with that authorization.

Robinson's remaining arguments are unpersuasive. His contention that the warrant was unconstitutionally obtained because it was based, in part, on information derived from the unconstitutional October 9, 2024, stop fails because, as discussed above, the Court finds the October 9, 2024, stop did not violate the Fourth Amendment. Likewise, Robinson's reliance on *State v. Guzman* for the proposition that the good faith exception does not apply under the Idaho constitution is misplaced in this federal prosecution. While Idaho law may impose different limitations under the state constitution, the admissibility of evidence in this Court is governed by federal law. Under controlling federal precedent, including *Leon* and its progeny, the good-faith exception applies.

In sum, the Court finds that the November 21, 2024, stop and search were supported by probable cause and, alternatively, justified under the automobile exception and the good-faith exception. The fruits of that search will not be suppressed, and the Motion is DENIED.

## V. CONCLUSION

The Court finds Defendants have not carried their burden to establish a violation of their Fourth Amendment rights occurred here.

The October 9, 2024, traffic stop was supported by observed traffic violations and was, therefore, lawful. The subsequent deployment of the K-9 and search of the vehicle were supported by probable cause (and the collective knowledge doctrine), and the seizure of currency was justified under the totality of the circumstances.

MEMORANDUM DECISION AND ORDER - 18

Similarly, the November 21, 2024, stop and search were supported by probable cause developed through a lengthy and coordinated investigation. To the extent Defendants challenge the validity or execution of the search warrant itself, those arguments do not warrant suppression. Even assuming any deficiencies in the warrant, the search was independently justified under the automobile exception. Additionally, the Court finds that the officers acted in objectively reasonable reliance on a judicially authorized warrant, and thus the good-faith exception would also apply.

In sum, the Court finds that law enforcement acted within the bounds of the Fourth Amendment and no constitutional violation occurred. Accordingly, Robinson's Motion to Suppress and Pyle's Joinder are DENIED. With respect to Luce, the Court concludes he lacks standing to challenge the search, and his Joinder is, therefore, DENIED on that basis.

**VI. ORDER**

1. IT IS HEREBY ORDERED that Defendant James Robinson's Motion to Suppress (Dkt. 71) is **DENIED**.



DATED: March 23, 2026

David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 19